UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

                                       Chapter 7

Martin Schackner,

                                       Case No.: 8-08-73742-478

                   Debtor.
---------------------------------------------------------x
Breslin Realty Development Corp.,

                   Plaintiff,

                                       Adv. Pro. No.: 8-09-08096-478

     - against -

Martin Schackner,

                   Defendant.
---------------------------------------------------------x

# MEMORANDUM DECISION AND ORDER

*Appearances:*

Weiss & Zarett, P.C.
*Attorneys for Plaintiff*
By: Michael D. Brofman, Esq.
3333 New Hyde Park Road
Suite 211
New Hyde Park, New York 11042

Thaler & Gertler
*Attorneys for Defendant*
By: Richard G. Gertler, Esq.
90 Merrick Avenue
Suite 400
East Meadow, New York 11554

Kirschenbaum & Kirschenbaum
*Attorneys for Chapter 7 trustee*
By: Seven B. Sheinwald, Esq.
200 Garden City Plaza
Garden City, New York 11530

The Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is Plaintiff's motion for summary judgment on its Fifth Cause of Action under 11 U.S.C. § 727(a)(3) and its Sixth Cause of Action under 11 U.S.C. § 727(a)(2)(A) seeking to deny the Defendant a discharge of all his debts.  This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (J), and (O), and 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(3).   After due consideration, the Plaintiff's motion is granted with respect to its Fifth Cause of Action.  The following constitutes the Court's finding of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

<u>FACTS</u>

Unless otherwise noted, the following facts are undisputed.  The Defendant obtained a bachelor's degree from Queens College, The City University of New York, where he majored in accounting and information systems.  The Defendant also has a Masters in Business Administration and has been a licensed Certified Public Accountant ("CPA") since at least 1984. Defendant was first hired as Controller for the Plaintiff and subsequently promoted to Chief Financial Officer in or about 1994.  Defendant's employment with the Plaintiff was terminated in 2004.

Following the Defendant's termination, Plaintiff commenced a lawsuit against the Defendant seeking damages allegedly sustained by Plaintiff as a result of Defendant's conduct based on several theories of liability, including claims under RICO statutes and fraud. The Defendant settled that lawsuit for $625,000 which remains unpaid.  Plaintiff also commenced a separate lawsuit against the Defendant which is currently pending in state court but stayed because of the Debtor's bankruptcy.

After his termination, Defendant began working in 2005 with a real estate agency at

which point he obtained his associate real estate broker's license.  In 2006, Defendant incorporated a Subchapter S corporation under the Internal Revenue Code known as Landmark Real Estate Services, Inc. ("Landmark") for limited liability purposes.  Defendant directed the real estate agency he worked for as one of its agents to pay commissions due to him individually to Landmark.  The commissions would be deposited into Landmark's bank accounts.  Landmark originally opened a bank account with North Fork Bank which subsequently became part of Capital One Bank.  In April of 2008, most of the funds in the North Fork Bank/Capital One Bank account were transferred to a new account with Bank of America.  A review of cancelled checks for Landmark's North Fork Bank account shows that the Debtor and his wife, Karen Schackner also known as Karen Klafter, were signatories on the account.  The Court does not have any copies of cancelled checks to the Bank of America account to determine whether Karen Schackner was also a signatory on Landmark's Bank of America account.  However, a review of Landmark's Bank of America statements show that payments were made for Mrs. Schackner's benefit but there is no information as to whether these expenses were related to Landmark's business or were Mrs. Schackner's personal expenses.  If the payments were for Mrs. Schackner's personal expenses, there is no evidence as to what consideration was given for Landmark's payment of these expenditures.

The Defendant's former litigation counsel, Siller Wilk, filed an involuntary Chapter 7 petition against the Defendant on July 14, 2008 (the "Petition Date") on the basis of unpaid legal fees.  An order for relief was entered on September 26, 2008 and a Chapter 7 trustee (the "Trustee") was appointed to the Defendant's bankruptcy case.  Plaintiff took a Rule 2004 examination of the Defendant and Mrs. Schackner.  On March 6, 2009, Plaintiff commenced this

adversary proceeding seeking a judgment determining that all sums due to Plaintiff by Defendant not be discharged pursuant to 11 U.S.C. § 523 and that the Defendant be denied a discharge of all his debts pursuant to 11 U.S.C. § 727.  On June 16, 2009, the Trustee commenced a separate adversary proceeding against the Defendant seeking a denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4), and 727(a)(5).  On November 24, 2009, in the interest of judicial economy and the efficiency of administration of these two adversary proceedings, the Court entered an order that this adversary proceeding commenced by the Plaintiff and the one commenced by the Trustee be procedurally consolidated for purposes of discovery and tried together.

On November 4, 2010, Plaintiff filed this motion for summary judgment seeking a determination as to the Plaintiff's Fifth and Sixth Causes of Action under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(3).  Plaintiff argues that the Defendant has failed to preserve and produce records, information, books and documents from which the Defendant's financial condition or business transactions might be ascertained and that the Defendant's failure to do so is legally insufficient to overcome what is required to rebuff Plaintiff's allegations and evidence. In addition, the Plaintiff asserts that within one year prior to the filing of the involuntary petition against the Defendant the Defendant was secreting his assets with the intent to hinder, delay or defraud the Plaintiff.

A review of the list of documents provided to the Plaintiff and the Trustee by the Defendant shows that the Defendant has not provided Landmark's tax returns for the 2007 and 2008 tax years and the Defendant has not provided his own tax returns for the 2008 tax year, if any.  Based upon the nature of the Debtor's livelihood, Trustee's counsel also made repeated

requests for documentation reflecting any real estate commissions, if any, which were earned prepetition which were not paid until postpetition, or were due to him and were yet still unpaid. Notwithstanding the representation by the Defendant's counsel that information on such issue would be provided, the Defendant did not submit any documentation or information.

While the Plaintiff and the Trustee obtained copies of whatever records the Defendant's employer had concerning the Defendant's commissions that were paid to Landmark, they are unable to reconcile these records with the limited Landmark records turned over by the Defendant because the Defendant failed to provide any of Landmark's records for the period prior to 2008.  Defendant did not maintain hard copies of the commission invoices from the real estate sales he made which indicate the commissions he had earned and were paid into Landmark's bank account on his behalf.  Without all of the Defendant's Landmark records, the invoices, tax returns and other documents, the Plaintiff and the Trustee are unable to determine (1) whether all of Landmark's income came solely from real estate commissions received from the real estate agency at which the Defendant is employed; (2) whether the Defendant had other sources of compensation; (3) whether additional commissions were due to the Defendant but were paid elsewhere at the Defendant's direction; or (4) whether the Defendant had unpaid prepetiton earnings that are due to the bankruptcy estate.

While the Defendant maintained his business records relating to Landmark on his personal computer, the Defendant asserted that the hard drive on his computer crashed in late 2007 or early 2008 and as a result he lost his electronic records for Landmark relating to the period before 2008.  Defendant stated that he did not have any electronic back-up for his personal computer prior to the computer crash.  During the course of his employment with

Plaintiff, however, Defendant had authorized the purchase of back-up tape systems for the Plaintiff and the Defendant allegedly removed one of the systems for his personal use. However, Defendant argued that the computer back-up was for a desktop computer the Defendant maintained in connection with his employment with Plaintiff but he no longer has possession of this equipment since his employment with Plaintiff was terminated nor did he obtain any back-up for his personal record keeping during the period between his termination and his computer crashing.

The Defendant testified under oath at his Rule 2004 examination that the commissions deposited into Landmark's bank accounts were ultimately transferred to his spouse's bank account because his spouse wanted to control the household finances.[1] Despite the Defendant's testimony that his spouse wanted to maintain control over household finances, Mrs. Schackner testified under oath at her Rule 2004 examination that it was the Defendant who oversaw the couple's finances and payment of expenses and that she only discussed their finances with the Defendant approximately every six months. Moreover, the funds transferred from Landmark's bank accounts were commingled with other funds that were deposited into Mrs. Schackner's bank account. Such commingling of funds hindered the Plaintiff and Trustee's ability to determine which payments or withdrawals from Mrs. Schackner's bank account related to Defendant's income or whether fair consideration was given for any withdrawal.

In the Trustee's affirmation in support of the Plaintiff's motion filed with the Court on

---

[1] While the Defendant's list of documents provided to the Plaintiff and the Trustee indicates that only the bank records for Defendant's personal bank accounts were provided and not Mrs. Schackner's bank account, those documents have not been submitted to the Court for review to examine the discrepancy between the list and the Defendant's testimony. However, Defendant's testimony that the funds in Landmark's bank accounts were transferred to his wife's bank account has not been disputed.

November 23, 2010 ("Trustee's Statement"), the Trustee noted that when he initially conducted

a review of the Defendant's financial affairs and schedules filed in this bankruptcy case, he noted

that there were inconsistencies and substantial unexplained discrepancies.  In different areas of

the Debtors' schedules, Statement of Financial Affairs, and the means test, the Defendant had

disclosed significantly different average monthly incomes ranging from $1,990.72 to $7,657.22

per month without any explanation of this discrepancy.  In reconstructing the Defendant's

monthly average income received prior to the petition date, the Trustee looked at all the deposits

that were noted in whatever Landmark bank statements the Defendant produced and determined

that the Defendant's average monthly compensation added up to $7,863.70 for the 6 month

period prepetition and $8,388.02 for the one year period prepetition.  Both averages were higher

than the income reported by the Debtor in his Schedule I and in his means test.  In addition, the

Trustee noted that the total deposits into the Landmark bank accounts exceed the amount of

income disclosed by the Defendant.

In addition, the Trustee stated that the Defendant did not produce Landmark's Bank of

America statement for July 2008 which would give the Trustee information as to Landmark's

funds as of the Petition Date.  The June 2008 bank statement shows a checking account balance

of $6,713.38 and an interest maximizer account with a balance of $30,137.95.  At the Debtor's

meeting of creditors, the Defendant stated that Landmark was no longer operating and had $0.00

value as of the Petition Date.  The Defendant has not provided any explanation as to the

whereabouts of approximately $37,000 that was in Landmark's bank account prior to the Petition

Date.

A hearing was held by the Court on the Plaintiff's motion and the Defendant's opposition

to the motion.  The Court grants the Plaintiff's motion based on the following.

<u>DISCUSSION</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7056, the Court may award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Bankr. P. 7056.

When no genuine triable issues of material fact exist, the moving party is entitled to judgment as a matter of law and summary judgment should be granted.  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11-12 (2d Cir. 1986).  The mere production of some evidence in support of the opposing party's position will not justify denial of a summary judgment motion, unless the court finds that there is evidence upon which a jury can properly proceed to find a verdict for the party opposing the motion. *American v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Instead, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Williams v. Smith*, 781 F.2d 318, 323 (2d Cir. 1986).  A court must always "resolve ambiguities and draw reasonable inferences against the moving party." *King v. United States Fire Ins. Co.*, 804 F.2d at 11.  However, the opposing party may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Id.,* 804 F.2d at 12.

With respect to the Plaintiff's Fifth Cause of Action under 11 U.S.C. § 727(a)(3), after a review of the facts and circumstances and the papers filed in this proceeding and the bankruptcy case, the Court finds, and all the parties agreed at the hearing, that no genuine issue of material

fact exists that would preclude this Court from finding that summary judgment is appropriate. Any testimony that would be provided at trial would not add to or change the facts as indicated herein.

Section 727 of the Bankruptcy Code provides in pertinent part:

(a) The Court shall grant the debtor a discharge unless –

***

(2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be destroyed, mutilated, or concealed –
    (A) property of the debtor within one year before the date of the filing of the petition;

***

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

11 U.S.C. §§ 727(a)(2)(A) and 727(a)(3).

Two elements must be proven by a preponderance of the evidence to determine whether denial of debtor's discharge is appropriate under Section 727(a)(3). *See D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 235 (2d Cir. 2006). First, the creditor must prove the debtor failed to keep or preserve books and records. Second, this failure must make it impossible to ascertain the debtor's true financial condition. *See In re Yerushalmi*, 393 B.R. 288, 297 (Bankr. E.D.N.Y. 2008); *Pergament v. DeRise (In re Nancy DeRise)*, 394 B.R. 677, 688 (Bankr. E.D.N.Y. 2008). Section 727(a)(3) 'does not require that a debtor maintain a bank account or "an impeccable system of bookkeeping." It merely requires that a debtor provide reasonable records so that his creditors may ascertain the debtor's present financial condition and

8

the nature of any business transactions that occurred within a reasonable period prior to filing.'
*Jacobowitz v. The Cadle Company (In re Jacobowitz)*, 309 B.R. 429, 436 (S.D.N.Y. 2004), *citing*
*Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (2d Cir. 1992).

In this case, while the Defendant did provide the Plaintiff and the Trustee with voluminous documents, the Plaintiff has shown that the Defendant has failed to keep or preserve sufficient or accurate books and records to satisfy section 727(a)(3). First, the Debtor has failed to keep or preserve records relating to commissions he earned as a real estate broker prior to the year 2008. While the Plaintiff and Trustee may have received some documentation directly from the real estate agency where the Defendant is employed, Defendant did not maintain any copies of written direction to the agency to pay each commission due him to Landmark and it is uncertain whether the documentation provided by the agency included all the commissions earned by the Defendant. In addition, Plaintiff and the Trustee cannot reconcile the documents to determine whether the Defendant received income from other sources.

While the Debtor indicated at his Rule 2004 examination that his accountant may have some of Landmark's business records, the Defendant has not produced those records or shown that he has attempted even to confirm whether the accountant has the records, or to obtain his records from the accountant. In addition, the Defendant has failed to provide records relating to the period after his computer crashed that were requested by the Trustee, such as the relevant tax returns for Landmark and the Defendant; Landmark's Bank of America statement for July 2008; and information regarding any prepetition earnings that may have been received or due postpetition. There is no explanation for the Defendant's failure to provide these documents and no  hardship shown as to why the Debtor could not obtain copies from third parties.

Similarly, the Defendant has neither denied the existence of prepetition earnings nor addressed whether he received them but rather asserts that the Trustee had not identified any funds earned by the Defendant prepetition and that the Trustee had not made a formal request for such information.  Defendant's response is an example of his unwillingness to cooperate in full with the Trustee, much less the Plaintiff, in providing the Trustee and creditors with sufficient information for them to ascertain the financial condition of the Defendant and his assets.  It is unreasonable to expect the Trustee to identify specific prepetition commissions the Defendant may have received postpetition without the Defendant providing him with the relevant documents to do so.  A formal request for such information is merely a formality and should not be a condition for obtaining the Debtor's complete cooperation when the Trustee has already discussed the need for this information with Defendant's counsel and requested that the information be provided.  Defendant is aware that the Trustee requires information to confirm the existence, or a sworn statement or other evidence to confirm the absence, of any prepetition earnings that may or may not have been turned over for the benefit of the bankruptcy estate.  The Defendant's actions clearly indicate an intent to conceal information in regard to his finances.

The burden of keeping and preserving records and providing such records from which the debtor's financial condition can be ascertained rests upon the debtor.  *Christy v. Kowalski (In re Kowalski)*, 316 B.R. 596, 602 (Bankr. E.D.N.Y. 2004).  Where there is a trustee appointed in a bankruptcy case, a debtor is obligated to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records and papers relating to the property of the estate".  11 U.S.C. § 541(a)(4).  If the debtor does not have the documents in his possession, the debtor is obligated to obtain such records where possible. "The fact that a debtor

directs its creditors to where they might obtain the records they seek does not relieve the debtor

of his responsibility to provide adequate records."   *In re Jacobowitz*, 309 B.R. at 438 *citing*

*United States v. Craig (In re Craig)*, 252 B.R. 822, 828 (Bankr. S.D. Fla. 2000).  As noted by the

court in *In re Jacobwitz:*

> The debtor is under an affirmative obligation to provide records that paint a true
> and accurate picture of the financial condition of the debtor at the time of filing.
> Where the debtor is under a duty to keep or preserve records, a party objecting to
> discharge need show only that it cannot ascertain the debtor's financial condition
> and recent business transactions from *the records provided*.  It is not necessary to
> show that there is no conceivable way to ascertain the financial condition of the
> debtor.

*In re Jacobowitz*, 309 B.R. at  438 (internal citation omitted).  Accordingly, it was the

Defendant's responsibility to provide his creditors and the Trustee with the documents which

could reveal the Defendant's financial condition, including documents that may be held by third

parties on his behalf such as those that may be held by his accountant or obtainable from the

bank, and the Defendant has failed to do so.  Accordingly, the Court finds that Defendant has

failed to keep and preserve books, documents and records relating to his financial condition or

business transactions. The Defendant's failure to keep or preserve such books, documents and

records adversely affects the ability of the Trustee and creditors to ascertain the Debtor's

financial condition, assets and business transactions.  As discussed above, Trustee is unable to

determine the existence of any prepetition earnings that may still be owed to the bankruptcy

estate, and the disposition of approximately $37,000 that was in Landmark's bank account

shortly before the Petition Date that was allegedly transferred to Mrs. Schackner's bank account.

Without all of Landmark's records together with all of the Defendant's other business

records, if any, the Trustee and creditors do not have an adequate picture of the Debtor's

11

financial condition and business transactions. Documentation obtained from the real estate agency may provide information as to some of the Defendant's income but would not provide information regarding whether the Defendant or Landmark had sources of income other than from commissions earned through the real estate agency.  While the Defendant states that all the funds transferred from Landmark's bank account into Mrs. Schackner's bank account were used to pay household expenses, the Trustee and creditors are unable to confirm such assertion because the Defendant has failed to provide evidence as to the nature of the payments or withdrawals from the Landmark account and Mrs. Schackner's account, such as bills and invoices, and whether all these payments were for household expenses.  When the Defendant commingled the Landmark funds with those from other sources, including those of Mrs. Schankner, into his spouse's account, the Trustee and creditors are unable to ascertain which payments from Mrs. Schackner's account are attributable to the Defendant's funds, and/or whether fair consideration was given for such payments.  Defendant's actions have hindered the Trustee's administration of the bankruptcy estate.

Moreover, the transfer of funds from Landmark to Mrs. Schackner's account as directed by the Debtor appear to be have been done to avoid the Debtor's creditors.  At the time Landmark was created, the Plaintiff was pursuing litigation against the Defendant.  Contrary to Defendant's testimony, Mrs. Schackner testified that the Defendant exerted control over the couple's finances and her bank account.  In light of the Defendant's failure to cooperate with the Trustee and the facts and circumstances shown in this case, the Court finds that the Defendant's failure to keep and preserve books, documents and records has hindered and delayed the Trustee's and creditors' ability to ascertain the Defendant's financial condition and business

transactions.

Once the creditor has satisfied its burden of proof, it is the debtor's burden to establish that the failure to produce records was justified in order to avoid a denial of discharge. *See In re Yerushalmi*, 393 B.R. at 297. In determining whether the failure is justified the court should take into account the reasonableness of debtor's failure in the particular circumstances. *See Id.* Debtor's education, experiences, and sophistication are some of the factors to consider in making this determination. *See In re Nancy DeRise*, 394 B.R. at 688; *In re Cacioli*, 463 F.3d at 235.

While the Defendant argues that his inability to provide some of the information is justified because the computer he used to record Landmark's transactions crashed and the records are no longer available, the Court finds otherwise. The Defendant has a high level of education, experience and sophistication. The Defendant has some background in information systems. As a CPA and the former Chief Financial Officer of the Plaintiff, the Defendant had been in the position of overseeing the Plaintiff's finances and record keeping relating to those finances. Clearly, Defendant knew of the importance of back-up systems and had the experience of authorizing the purchase of back-up tape systems for the Plaintiff which he maintained in the course of his employment with Plaintiff. The Defendant should have known that in the absence of a back-up system, copies of records should be maintained or be accessible even if not for bankruptcy purposes then for tax reporting and record keeping purposes. Indeed, the Defendant would have needed to provide his accountant or Landmark's accountant with records regarding his business transactions and those of Landmark to prepare appropriate tax returns.

While the Defendant did indicate that the accountant may have some of the relevant documentation, there is no evidence produced by the Defendant to support his representations. It

is the Defendant's duty to obtain such documents from the accountant if they exist.  Likewise, it is the Defendant's responsibility to obtain necessary bank statements from the bank if the Defendant did not have possession of such statements as discussed above.  Based upon the facts and circumstances presented to the Court, the Court finds that the Defendant's failure to keep and preserve books, documents and records to be unjustifiable.

Accordingly, the Court finds that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).  As the Court determined that a denial of a discharge under 11 U.S.C. § 727(a)(3) is warranted, the Court deems it unnecessary to make a determination with respect to Plaintiff's Sixth Cause of Action under 11 U.S.C. §727(a)(2)(A).

CONCLUSION

Based upon the foregoing, the Plaintiff's motion for summary judgment on its Fifth Cause of Action under 11 U.S.C. § 727(a)(3) is granted.  The Defendant's discharge is denied.

So ordered.



Dated: **Central Islip, New York**
       **April 7, 2011**

**Dorothy Eisenberg**
**United States Bankruptcy Judge**